In the Matter of the Arbitration of
**MUTUAL REINSURANCE BU-
REAU, Claimant–Appellee,**

v.

**GREAT PLAINS MUTUAL INSURANCE
COMPANY, INC., Respondent–
Appellant.**

No. 91–3119.

United States Court of Appeals,
Tenth Circuit.

July 13, 1992.

Norman R. Kelly of Norton, Wasserman, Jones & Kelly, Salina, Kan., for respondent-appellant.

Clarence L. King, Jr. and Larry G. Michel of Hampton, Royce, Engleman & Nelson, Salina, Kan., for claimant-appellee.

Before SEYMOUR, SETH, and ALDISERT *, Circuit Judges.

SETH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

This appeal arose from a diversity action to enforce an arbitration award in accordance with the Federal Arbitration Act, 9 U.S.C. § 1. Appellant Great Plains Mutual Insurance Company appeals from an order of the District Court for the District of Kansas confirming an arbitration award in favor of Appellee Mutual Reinsurance Bureau. 750 F.Supp. 455. Appellant contends that an arbitration clause in a reinsurance agreement between it and Appellee is unenforceable under K.S.A. § 5–401 and the McCarran–Ferguson Act, 15 U.S.C.

---

* Honorable Ruggero J. Aldisert, United States
Circuit Judge for the Third Circuit, sitting by
designation.

§§ 1011–1015. We agree and reverse the decision of the district court.

In January of 1987, Appellant, a Kansas mutual insurance company, contracted with Appellee to reinsure certain losses that might be sustained by Appellant. Under the reinsurance agreement, Appellant was responsible for the first $150,000 of the net loss attributable to any one occurrence and Appellee was liable for amounts over $150,000 not to exceed $427,500. A clause in the reinsurance agreement provided that in case of a dispute between the parties, either party could submit the dispute to binding arbitration.

On August 17, 1987, Kansas was struck by a storm which caused damage to property insured by Appellant. On August 19, 1987, either that same storm or a different storm struck Kansas and damaged property insured by Appellant. Appellant made a claim against Appellee under the reinsurance agreement claiming that the storms of August 17 and 19 were one occurrence. Initially, Appellee made payments to Appellant totaling $275,401.09. These payments were made based on Appellee's position that the storms were separate occurrences. On December 1, 1987, Appellee notified Appellant that it was not waiving any of its rights under the reinsurance agreement. On January 4, 1988, Appellee sent a letter to Appellant announcing its intention to send the matter of whether the storms were one event or two to arbitration pursuant to the agreement.

The matter proceeded to arbitration under the terms set forth in the reinsurance agreement. Appellant refused to participate in the arbitration proceedings asserting that the arbitration clause in the reinsurance agreement was not enforceable under K.S.A. § 5–401. After an evidentiary hearing, the arbitrators found that the storms which passed through Kansas on August 17 and 19 were the result of separate storm systems and therefore were separate occurrences. The arbitrators also ruled that because Appellee's payments were conditional, Appellee was entitled to reimbursement of $142,500 that it had overpaid Appellant.

Appellant refused to pay the award contending it was void and unenforceable. Federal jurisdiction existed independently and Appellee filed suit in the United States District Court for Kansas pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), to confirm the award of the arbitrator. The district court entered judgment for Appellee and this appeal followed.

Appellant contends that the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, precludes the application of the FAA to the reinsurance agreement. Appellant argues that the FAA would conflict with K.S.A. § 5–401 and, therefore, under the McCarran–Ferguson Act, K.S.A. § 5–401 controls.

The McCarran–Ferguson Act provides in part: "No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance...." 15 U.S.C. § 1012(b). The district court held that K.S.A. § 5–401 did not regulate the "business of insurance" and, therefore, the FAA did not "invalidate, impair, or supersede" a law of the state of Kansas enacted for the purpose of regulating the "business of insurance."

▮ Thus, the issue before us is whether K.S.A. § 5–401 is a law enacted for the purpose of regulating the "business of insurance" as that term is used in the McCarran–Ferguson Act. We hold that § 5–401 is a law enacted for the purpose of regulating the "business of insurance" and reverse the decision of the district court.

The version of K.S.A. § 5–401 in effect at the time the reinsurance agreement was executed provided:

> **Validity of arbitration agreement.** A written agreement to submit any existing controversy to arbitration or a provision in a written contract, *other than a contract of insurance* ..., to submit to arbitration any controversy, other than a claim in tort, thereafter arising between the parties is valid, enforceable and irrevocable...."

(Emphasis added.)

The McCarran–Ferguson Act does not define "business of insurance" either in its

text or in its legislative history. We are guided, however, by a trilogy of Supreme Court cases construing the term.

In the first of these three cases, *Securities and Exch. Comm'n v. National Sec.*, 393 U.S. 453, 460, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969), the Supreme Court emphasized that the relationship between the insurer and insured was of paramount importance in determining what constitutes the "business of insurance." The Court said:

> "The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.' Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws governing the 'business of insurance.' "

*Id.*

Later, in *Group Life and Health Ins. Co. v. Royal Drug*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the Court again emphasized that Congress, in passing the McCarran–Ferguson Act, was primarily concerned with the relationship between the insurer and the insured. *Id.* at 215, 99 S.Ct. at 1075. The Court quoted from *National Securities* and noted that a common aspect of the "business of insurance" is the contract between the insurer and insured.

The Court's most recent opinion dealing with the "business of insurance" is *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). After reviewing *National Securities* and *Royal Drug*, the Court identified three criteria relevant to determining whether a particular practice is part of the "business of insurance":

> "*first*, whether the practice has the effect of transferring or spreading a poli-

cyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry. None of these criteria is necessarily determinative in itself...."

*Pireno*, 458 U.S. at 129, 102 S.Ct. at 3009.

Reviewing K.S.A. § 5–401 in light of the Supreme Court's decisions in *National Securities, Royal Drug,* and *Pireno*, we must conclude that K.S.A. § 5–401 is a statute regulating the "business of insurance." We also conclude that this "business of insurance" includes reinsurance.

The criterion that was the focus in *National Securities* and *Royal Drug*, and to a lesser extent in *Pireno*, was "whether the practice is an integral part of the policy relationship between the insurer and the insured." We are mindful of the Supreme Court's statement in *National Securities* that statutes aimed at protecting the relationship between the insurance company and the policyholder "directly or indirectly, are laws regulating the 'business of insurance.' " *National Securities*, 393 U.S. at 460, 89 S.Ct. at 568–69. Section 5–401 directly regulates the relationship between the insurance company and its policyholder by stating that an agreement between the two to arbitrate a dispute is unenforceable. To expressly invalidate an agreement contained in the insurance contract touches the core of the "business of insurance" as explained in *National Securities. Id.*

■ With regard to the criterion identified in *Pireno* concerning the underwriting of risk, it should be noted that a contract of insurance is evidence of an agreement to spread risk. Section 5–401 has the effect of invalidating any arbitration provision included in such a contract. Simply put, the Kansas legislature has placed limits on the enforceability of an agreement to spread risk by enacting K.S.A. § 5–401.

The district court relied on our earlier decision in *Hart v. Orion Ins. Co.*, 453 F.2d 1358 (10th Cir.1971), as well as the Second Circuit's decision in *Hamilton Life Ins. Co. of N.Y. v. Republic Nat'l Life Ins. Co.*, 408

F.2d 606 (2d Cir.1969), for the proposition that state arbitration laws are not laws regulating the "business of insurance." The court then held that K.S.A. § 5–401 was a law governing arbitration generally and not a law regulating the "business of insurance." The statutes at issue in *Hart* and *Hamilton* differ from K.S.A. § 5–401 in one very important respect in that those statutes governed arbitration in general and did not mention "contracts of insurance." The trial court noted as to *Hart* that the statute there considered did not contain the exception "contracts of insurance," but apparently concluded that made no difference. Section 5–401 as it now exists expressly excludes contracts of insurance from arbitration and therefore it is not comparable to the statutes in *Hart* and *Hamilton*.

The district court also held that the FAA does not conflict with K.S.A. § 5–401 because § 5–401 does not apply to the reinsurance agreement. The court reasoned that § 5–401 does not apply to the reinsurance agreement because the reinsurance agreement is a "contract for insurance" and § 5–401 only applies to "contracts of insurance."

Thus, the district court found that the FAA does not invalidate, impair or supersede any law of the state of Kansas and does not run afoul of the McCarran–Ferguson Act. We cannot agree with the district court's distinction between a "contract of insurance" and a "contract for insurance."

In *Security Mut. Casualty Co. v. Century Casualty Co.*, 531 F.2d 974 (10th Cir. 1976), we distinguished between a "contract for insurance" and "contract of insurance." The distinction was helpful in that case to determine whether a notice provision in an insurance contract was a condition precedent. We noted that a reinsurance treaty is usually a contract for insurance, consisting of a bilateral agreement containing mutual covenants. *Id.* at 977. In contrast, a primary insurance contract, or a contract of insurance, is based on a condition and a promise and, therefore, is unilateral in nature. *Id.* This distinction

was an important element in *Security Mutual* but is not useful here.

Moreover, it requires a strained interpretation of K.S.A. § 5–401 to reach the conclusion that the Kansas legislature intended to exclude reinsurance agreements by the use of the words "contract of insurance." To limit the term "contract of insurance" to primary insurance contracts would make some of the statutes regulating insurance in Kansas meaningless. For example, K.S.A. § 40–201 titled "Insurance company defined" provides in part:

"For the purposes of this article the term 'insurance company' shall, unless otherwise provided, apply to all corporations, companies, associations, societies, persons or partnerships writing *contracts of insurance*, indemnity, or suretyship upon any type of risk or loss...."

(Emphasis added.)

■ Applying the interpretation of "contracts of insurance" urged by Appellee to § 40–201, a company engaged in the business of reinsurance in Kansas would not be considered an insurance company under the Kansas statutes because the legislature did not include the term "contract for insurance." We are not persuaded that the Kansas legislature intended to distinguish between primary insurance contracts and reinsurance contracts by use of a term such as "contract of insurance." Therefore, we hold that K.S.A. § 5–401 applies to reinsurance agreements as well as primary insurance contracts and the McCarran–Ferguson Act precludes the application of the FAA to the reinsurance agreement at issue here.

For the application of the McCarran–Ferguson Act it is not necessary, as the Appellee urges, that the state statute "regulate the business of insurance" be in the form of an insurance code or an act relating only to insurance. The application of the Kansas statute here concerned to insurance as an exception is clear and direct although included in an act relating basically to arbitration.

It is apparent that the Federal Arbitration Act is significant legislation to provide for the enforcement of arbitration agree-

ments and to express an important policy favoring arbitration. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). However, in our view the Kansas statute combined with the McCarran–Ferguson Act prevents its application.

Because we hold that the FAA does not apply to the reinsurance agreement here, we need not address the other contentions raised by Appellant in this appeal.

Accordingly, the judgment of the District Court for the District of Kansas is REVERSED and the case is REMANDED for proceedings consistent with this opinion.